## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| A.B., *et al.*, )<br><br>    Plaintiffs, )<br><br>v. )<br><br>JACK R. SMITH, *et al*, )<br><br>    Defendants. ) | Civil Action No. 21-cv-00781-LKG<br><br>Dated:  May 26, 2022 |

A.B., *et al.*,

      Plaintiffs,

v.

JACK R. SMITH, *et al*,

      Defendants.

Civil Action No. 21-cv-00781-LKG

Dated:  May 26, 2022

## MEMORANDUM OPINION AND ORDER

## I.    INTRODUCTION

This Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–82, case involves a challenge to two individual education programs ("IEP") developed by the Montgomery County Public Schools (the "MCPS") for the education of A.B., a student with disabilities.  *See generally* Compl., ECF No. 1.  The parties have filed cross-motions for summary judgment on the issues of whether the MCPS provided A.B. with a free, appropriate public education ("FAPE") for the 2019-20 and 2020-21 school years, pursuant to Fed. R. Civ. P. 56.  *See generally* Pl. Mot., ECF No. 17; Pl. Mem., ECF No. 17-1; Def. Mot., ECF No. 25; Def. Mem., ECF No. 25-1.  In addition, plaintiffs have moved to supplement the record with additional evidence.  *See* Pl. Mot. Add. Evid., ECF No. 18; Pl. Mem. in Supp. Mot. Add. Evid., ECF No. 18-1.  No hearing is necessary to resolve these motions.  *See* L.R. 105.6 (D. Md. 2021). For the reasons set forth below, the Court:  (1) **DENIES** plaintiffs' motion for additional evidence; (2) **DENIES** plaintiffs' motion for summary judgment; (3) **GRANTS** defendants' cross-motion for summary judgment; and (4) **DISMISSES** the complaint.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      Factual Background[1]

This IDEA case involves a challenge to two IEPs developed by the MCPS for the education of A.B., a student with disabilities. *See generally* Compl. A.B. is a minor student who resides in Montgomery County, Maryland, with his parents, plaintiffs L.K. and J.B. *Id.* at ¶ 3. Defendants are the Montgomery County Board of Education (the "Board"), a local education agency that operates the MCPS, and Dr. Jack Smith, the Superintendent of the MCPS. *Id.* at ¶¶ 4-5.

Background

As background, A.B. is a 15-year-old student who has been identified by the MCPS as having an educational disability and who has been found eligible for special education services under the IDEA. *Id.* at ¶ 6. Prior to living in Maryland, A.B. lived in California with his biological family until the age of five, during which time he experienced significant abuse and neglect. *Id.* at ¶ 8. In 2012, A.B. was removed from his biological family and placed into foster care, where he remained until he was placed with L.K. and J.B. in 2016. Pl. Ex. 1; *see also* ALJ's Dec. 22, 2020, Decision ("Dec.") at 11-12.

After moving to Maryland, A.B.'s parents enrolled A.B. in the MCPS's Flower Valley Elementary School on December 29, 2016. Dec. at 12; Def. Ex. 1 at 2. In March 2017, A.B. was found eligible for a Section 504 Plan, pursuant to Section 504 of the Rehabilitation Act of 1973. Dec. at 12; Def. Ex. 3 at 5.

During the 2017-18 school year, A.B. attended Earle B. Wood Middle School and he received accommodations pursuant to a Section 504 plan. Dec. at 12; *see also* Def. Ex. 6 at 4; Def. Ex. 7 at 6. In April and May of 2018, the MCPS convened IEP meetings to review A.B.'s performance and the MCPS found A.B. to be eligible for services pursuant to the IDEA, under the disability coding of specific learning disability. Dec. at 12-15; Def. Exs. 10, 11, 16, 17. An

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the complaint ("Compl."); the administrative record ("Pl. Ex." or "Def. Ex."); the Administrative Law Judge's December 22, 2022, Decision ("Dec."); plaintiffs' motion for summary judgment ("Pl. Mot.") and memorandum in support thereof ("Pl. Mem."); and defendants' cross-motion for summary judgment ("Def. Mot.") and memorandum in support thereof ("Def. Mem.").

IEP was developed on May 17, 2018, which provided for three hours and 45 minutes daily of special education services inside the classroom for English, Math, Social Studies, and Science, and a number of instructional and testing accommodations and supplemental aids and services. Dec. at 14-15; Def. Ex. 17.

On January 20, 2019, A.B.'s parents sent a draft letter to Sarah Jackson, MCPS Special Education Coordinator, advocating for A.B.'s placement in the MCPS's Gifted and Talented Learning Disability Program (the "GT/LD Program"). *See* Def. Exs. 69, 70. On February 15, 2019, the MCPS IEP team made amendments to A.B.'s IEP in reading comprehension, written expression, and math application. *See* Def. Ex. 18 at 3. The IEP team also discussed whether A.B. should be considered for the GT/LD Program and A.B.'s parents requested at that time that the IEP team continue to review A.B.'s progress and the appropriateness of placing A.B. in the GT/LD Program. *Id*.

<u>The 2019-20 IEP</u>

On June 12, 2019, the IEP team met to conduct an annual review and make programming recommendations for A.B.'s IEP for the 2019-20 school year. Dec. at 21. A.B.'s parents attended this meeting with their educational consultant, Richard Weinfeld. *Id*. During the meeting, the IEP team reviewed A.B.'s academic profile and determined that A.B. met the criteria for the GT/LD Program. *Id.* at 22-23. MCPS staff, A.B.'s parents, and their consultant collaborated in drafting the 2019-20 IEP's present levels of performance, instructional and testing accommodations, supplemental aids and services, and goals and objectives. *Id*. at 22-26.

The 2019-20 IEP provides for three hours and 45 minutes daily of specialized services and support per week, three hours of which would be in the general education classroom to address English, Math, Social Studies, and Science, and 45 minutes of which would be outside of the classroom in a self-contained GT/LD Program Resource Class. *Id.* at 23, 26; Def. Ex. 23 at 29-31. The 2019-20 IEP also provides that A.B. would receive 15 minutes of counseling services per week. *See* Dec. at 27. In addition, the 2019-20 IEP includes various supplemental aids and services, and instructional and testing accommodations, that were to be provided throughout the school day by all educational providers. *Id.* at 24-26; Def. Ex. 23 at 11-23.

The 2019-20 IEP proposes implementation through the GT/LD Program at E. Lee Brooke Middle School, which was the least restrictive environment under the IDEA. Dec. at 27; Def.

Ex. 23 at 31.  A.B.'s parents and Mr. Weinfeld agreed with the GT/LD Program proposal, but they requested that A.B. attend the GT/LD Program at North Bethesda Middle School.  Dec. at 27.  And so, on June 26, 2019, A.B.'s parents applied for a Change of School Assignment from E. Lee Brooke Middle School to North Bethesda Middle School, which the MCPS subsequently granted.  *Id.*

Thereafter, on August 30, 2019, A.B.'s parents notified the MCPS that they were unilaterally enrolling A.B. in the Lab School of Washington for the 2019-20 school year.  *Id.*

The 2020-21 IEP

In December 2019, counsel for A.B. and his parents requested that the MCPS start the process for developing A.B.'s IEP for the 2020-21 school year.  *Id.* at 28.  To that end, the MCPS held four IEP meetings in the Spring of 2020 to review documents provided by A.B.'s parents, the Lab School of Washington and MCPS staff to develop an IEP for the 2020-21 school year.  *Id.* at 28-29.

The 2020-21 IEP proposes five hours and 50 minutes daily of special education services, of which four hours and ten minutes would be inside the general education classroom daily and one hour and 40 minutes would be outside the general education classroom daily.  *Id.* at 51-52. This IEP also provides that A.B. would be in co-taught classrooms for Honors English 9, Honors Biology, Honors Geometry, Honors U.S. History and with special education paraeducator support in an elective of his choice.  *Id.* at 51.

The 2020-21 IEP also provides for 30 minutes per month of occupational therapy; 30 minutes per week of counseling; and three hours per month of speech therapy outside the classroom and one hour per month inside the classroom.  *Id.* at 51-52.  In addition, the 2020-21 IEP includes various supplemental aids and services, and instructional and testing accommodations, that would be provided throughout the school day by all educational providers. *Id.* at 47-51.  Lastly, this IEP also provides for implementation at Northwood High School in the GT/LD Program, which was the least restrictive environment under the IDEA.  *Id.* at 52.

<u>The Due Process Hearing And ALJ Decision</u>

On May 20, 2020, A.B.'s parents requested a due process hearing to challenge the 2019-20 IEP. *Id.* at 1. On July 16, 2020, A.B.'s parents amended their due process complaint to include a challenge to the 2020-21 IEP. *See* Pl. Ex. 1.

Administrative Law Judge Jerome Woods, II (the "ALJ") held a due process hearing in this matter over a period of eight days during October and November 2020. *See id.* at 3. During the due process hearing, three witnesses testified on behalf of the MCPS: (1) Sarah Jackson, an expert in special education with an emphasis on gifted and talented and twice exceptional students; (2) Marjorie Siegel, an expert in speech and language pathology; and (3) Jody Polon, an expert in occupational therapy. *See id.* at 11.

In addition, the following witnesses testified on behalf of A.B. and his parents: (1) Richard Weinfeld, A.B.'s educational consultant; (2) Rayna Dinsmore, a speech and language pathologist at the Lab School of Washington; (3) Jessica Lux, the Head of Junior High at the Lab School of Washington; (4) Laura Ressler, A.B.'s educational consultant; (5) Susan LaVigna, A.B.'s social worker; (6) Courtney Heldman, an occupational therapist at the Lab School of Washington; and (7) A.B.'s parents. *Id.* at 10-11. The ALJ also considered 129 exhibits that were introduced by the parties during the hearing. *See id.* at 4-10.

On December 22, 2020, the ALJ issued a decision holding that the 2019-20 and 2020-21 IEPs were reasonably calculated to provide A.B. with a FAPE in the least restrictive environment (the "December 22, 2020, Decision"). *See generally id.* And so, the ALJ denied plaintiffs' challenges to these IEPs. *See generally id.*

Specifically, the ALJ recognized in the December 22, 2020, Decision that A.B. "is identified as a student with [a specific learning disorder] under [the] IDEA and is twice exceptional." *Id.* at 64. The ALJ also observed that A.B. experiences inattention, immaturity, and impulsivity, which impacts him in the areas of academic fluency, written expression, social interactions, and math problem solving skills, and that A.B. was impacted by ADHD and experiences deficits with executive functioning skills. *Id.*

With regards to the 2019-20 IEP, the ALJ determined that this IEP required that A.B. receive special education services under the IDEA as a student with a specific learning disorder

who is twice exceptional.  *Id.*  In this regard, the ALJ determined that the 2019-20 IEP was developed on June 12, 2019, and that the MCPS determined that A.B. continued to require specialized instruction and related services, because of a clear discrepancy between his skills and processing speed.  *Id.*

The ALJ also determined that, to address A.B.'s needs, the 2019-20 IEP contains numerous testing and instructional accommodations, use of assistive technology devices, and supplementary aids and services, to help A.B. achieve the annual goals in the IEP.  *Id.*  The ALJ also observed that, with the exception of A.B.'s social/emotional goals, A.B.'s parents did not dispute the developed goals when the IEP team met on June 12, 2019.  *Id.* at 65 (observing that Mr. Weinfeld and A.B.'s mother participated in the IEP team meeting where A.B.'s program was developed for the 2019-20 school year).

In considering the levels of A.B.'s performance at the time the MCPS developed the 2019-20 IEP, the ALJ determined that Mr. Weinfeld observed A.B. at Earle B. Wood Middle School for approximately one hour and 40 minutes in June 2019, and that Mr. Weinfeld also reviewed the results of a private psychoeducational evaluation conducted by Myra Burgee, Ph.D., which helped the IEP team to determine A.B.'s present levels of performance.  *Id.* at 66. In this regard, the ALJ observed that Dr. Burgee's report recommended that A.B. receive his educational program in the GT/LD Program with numerous accommodations and supports, and that many of Dr. Burgee's recommendations were incorporated into the 2019-20 IEP.  *Id.*

The ALJ also determined that the testimony of the MCPS's witness, Sarah Jackson, credibly highlighted A.B.'s strengths and weaknesses.  *Id.* at 71.  The ALJ further determined that Ms. Jackson's testimony was supported by reliable data and anecdotal information.  *Id.*  And so, the ALJ "placed considerably more weight upon Ms. Jackson's testimony" in considering A.B.'s social/emotional needs.  *Id.* at 71.

The ALJ also recognized that Mr. Weinfeld testified that A.B. would benefit from having a small class for part of his academic day and from being with a cohort of peers who are also gifted and have learning challenges.  *Id.* at 66.  And so, the ALJ concluded that:

> Ms. Jackson and quite frankly, Mr. Weinfeld were proverbially on the same page when supporting the decision that [A.B.'s] IEP could be implemented in a [GT/LD] program in a comprehensive school.  Although sometime between the end of June and August 2019, Mr. Weinfeld changed his mind

and determined [that A.B.'s] program should be implemented in a separate
day school, the evidence does not support that decision.

*Id.* at 72.

Lastly, the ALJ determined that there was no area of deficient skill that impacted A.B.'s
ability to make progress in the general curriculum that was not fully addressed in the 2019-20
IEP.  *Id.*  In this regard, the ALJ concluded that the 2019-20 IEP "meets all of the criterion," by
proposing an IEP that:  (1) accurately identifies A.B.'s present levels of performance, to include
academic, emotional, behavioral, social, and physical deficits which impede his ability to
progress in the general curriculum; (2) addresses not only A.B.'s weaknesses, but also his
strengths; (3) identifies a specific, measurable result for A.B. to achieve at the end of the IEP
period; and (4) allows A.B. to make meaningful educational progress in the least restrictive
environment.[2]  *Id.* at 73.  And so, the ALJ concluded that the MCPS developed an appropriate
IEP and placement for the 2019-20 school year that was reasonably calculated to enable A.B to
make appropriate progress in light of his unique needs as a student who has a learning disability
and is twice exceptional.  *Id.* at 76-77.

With regards to the 2020-21 IEP, the ALJ also determined that this IEP was reasonably
calculated to meet A.B.'s unique needs.  *Id.* at 77.  In this regard, the ALJ observed that the IEP
team met via a video platform over the course of four meetings in April and June 2020, to
develop this IEP.  *Id.*  The ALJ also determined that the IEP team reviewed A.B.'s progress
while attending the Lab School of Washington.  *Id.*  Specifically, the ALJ determined that the
2020-21 IEP team included all of the supplementary aids and services that A.B. received at the
Lab School of Washington and that the IEP team "meticulously reviewed" each of A.B.'s goals
and objectives in his Lab School of Washington IEP.  *Id.*

In addition, the ALJ observed that Ms. Jackson wrote the prior written notice for the IEP
team meeting that was instrumental in developing A.B.'s 2020-21 IEP.  *Id.* at 77.  And so, he
"gave her testimony a great deal of weight and found her credible with regard to the rationale

---

[2] The ALJ also determined that "it is clear from a review of [A.B.'s] academic performance while in
MCPS that he can perform better academically and learn the appropriate social and communication skills
when he has access to the general education setting and with similar cohorts, with proper supports and
accommodations."  Dec. at 74.

used by the IEP team in deciding what [A.B.'s] program would entail." *Id.* (observing that the prior written notice, as well as the written IEP, states A.B.'s present levels of performance from the then most recent evaluative data, including the evaluations conducted by the Lab School of Washington).

The ALJ also observed that all the evaluative data regarding A.B.'s progress at the Lab School of Washington indicated the academic, physical and social/emotional areas affected by A.B.'s disability are math problem solving; reading comprehension; reading fluency; reading phonics; speech and language expressive language; speech and language pragmatics; written language content; written language mechanics; and executive functioning and visual motor skills. *Id.* at 79. Given this, the ALJ determined that the 2020-21 IEP would address A.B.'s needs. *Id.* at 82. And so, the ALJ also concluded that the 2020-21 IEP was reasonably calculated to enable A.B. to make progress appropriate in light of his circumstances. *Id.* at 91.

Because the ALJ concluded that the 2019-20 IEP and 2020-21 IEP provided A.B. with a FAPE, he did not consider whether A.B's placement at the Lab School of Washington was proper and he denied plaintiffs' request for tuition reimbursement. *Id.* at 91-92.

Plaintiffs, alleging error, seek to set aside the ALJ's decision. *See* Pl. Mot., Pl. Mem.

**B.    Procedural Background**

Plaintiffs commenced this action on March 26, 2021. *See* Compl.

On July 23, 2021, plaintiffs filed a motion for summary judgment and a memorandum in support thereof, and a motion for additional evidence and a memorandum in support thereof. *See* Pl. Mot.; Pl. Mem.; Pl. Mot. Add. Evid.; Pl. Mem. in Supp. Mot. Add. Evid. On October 1, 2021, defendants filed a response in opposition to plaintiffs' motion for summary judgment; a response in opposition to plaintiffs' motion for additional evidence; and a cross-motion for summary judgment and a memorandum in support thereof. *See* Def. Mot.; Def. Mem.; Def. Resp., ECF No. 26.

On October 29, 2021, plaintiffs filed a consolidated reply in support of their motions for summary judgment and for additional evidence and a response in opposition to defendants' cross-motion for summary judgment. *See* Pl. Resp., ECF No. 27. On December 3, 2021,

defendants filed a reply in support of their cross-motion for summary judgment.  *See* Def. Reply, ECF No. 28.

These motions having been fully briefed, the Court resolves the pending motions.

### III.    LEGAL STANDARDS

#### A.    Fed. R. Civ. P. 56

A motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 will be granted only if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  And so, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979).

When reviewing cross-motions for summary judgment in an IDEA case, this Court is "obliged to conduct a modified de novo review" of the administrative record, giving "due weight" to the underlying administrative proceedings.  *JH ex rel. JD v. Henrico Cty. Sch. Bd.*, 395 F.3d 185, 196 (4th Cir. 2005) (citations omitted).  Given this, the factual findings of the ALJ are considered *prima facie* correct, if they are "regularly made."  *See J.P. v. Cty. Sch. Bd. Hanover Cty., Va.*, 516 F.3d 254, 259 (4th Cir. 2008); *Cty. Sch. Bd. Henrico Cty., Va. v. Z.P. ex rel. R.P.*, 399 F.3d 298, 305 (4th Cir. 2005).  And so, if the Court "is not going to follow [the ALJ's factual findings, it] is required to explain why it does not" do so.  *Hartmann ex. rel Hartmann v. Loudoun Cty. Bd. of Educ.*, 118 F.3d 996, 1001 (quoting *Doyle v. Arlington Cty. Sch. Bd.*, 953 F.2d 100, 105 (4th Cir. 1991)).[3]

---

[3] The Court has held that, when evaluating whether findings of fact are "regularly made, the proper inquiry concerns the *process* through which the findings were made."  *S.A. v. Weast*, 898 F. Supp. 2d 869, 874 (D. Md. 2012) (citation omitted) (emphasis in original); *see also J.P.*, 516 F.3d at 259;  *Doyle*, 953 F.2d at 105 ("[I]n deciding what is the due weight to be given an administrative decision under *Rowley*, we think a reviewing court should examine the way in which the state administrative authorities have arrived at their administrative decision and the methods employed.").

**B.      The Individuals With Disabilities Education Act**

The IDEA requires that all States that receive federal funds for education provide each child between the ages of three and 21 who has a disability with a FAPE.[4]  20 U.S.C. § 1412(a)(1)(A).  The FAPE guaranteed by the IDEA must provide a disabled child with meaningful access to the educational process.  *See Rowley*, 458 U.S. 176, 192 (1982).  The FAPE must also be reasonably calculated to confer "some educational benefit" on the disabled child.  *Id*. at 207.  The educational benefit must also be provided in the least restrictive environment appropriate to the child's needs, with the disabled child participating to the "maximum extent appropriate" in the same activities as his or her non-disabled peers.  20 U.S.C. § 1412(a)(5)(A); *see also* 34 C.F.R. § 300.550.

To ensure delivery of a FAPE, the IDEA requires a school district to provide an appropriate IEP for each child determined to be learning disabled.  *See* 20 U.S.C. § 1414(d)(1)(A).  The Supreme Court has held that, to "meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances."  *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 999 (2017).  The Supreme Court has also recognized that courts should afford deference to the educational judgment of school officials when evaluating the sufficiency of an IEP under the IDEA.  *See id.* at 1001.  The United States Court of Appeals for the Fourth Circuit has also recognized the significant importance of the IDEA's least restrictive environment provisions and held that "[m]ainstreaming of handicapped children into regular school programs where they might have opportunities to study and to socialize with non-handicapped children is not only a laudable goal but is also a requirement of the [IDEA]." *DeVries ex. rel. DeBlaay v. Fairfax Cty. Sch. Bd.*, 882 F.2d 876, 878 (4th Cir. 1989); *see also M.M. ex. rel. D.M. v. Sch. Dist. Greenville Cty.*, 303 F.3d 523, 526 (4th Cir. 2002) (holding that special education services "must be provided to a disabled child in the least restrictive and appropriate environment, with the child participating, to the extent possible, in the same activities as non-disabled children.") (citation omitted).

---

[4] Maryland's regulations governing the provision of a FAPE to children with disabilities in accordance with the IDEA are found at Md. Regs. Code tit. 13A, §§ 05.01 to .16.

If the parents are not satisfied with the IEP, they may "present a complaint with respect to any matter related to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child." 20 U.S.C. § 1415(b)(6). After such a complaint has been received, the parents are entitled to request a due process hearing conducted by the state or local educational agency. *Id.* at § 1415(f). In Maryland, the Maryland Office of Administrative Hearings conducts the due process hearing and any party can appeal the administrative ruling to federal or state court. Md. Code Ann., Educ. § 8-413(d)(1); Md. Regs. Code tit. 13A, § 05.01.15(C)(1). If the Court determines that a violation has occurred, then it "shall grant such relief as [it] determines is appropriate." 20 U.S.C. § 1415(i)(2); *see also Sch. Comm. Town of Burlington v. Dep't of Educ.*, 471 U.S. 359, 369-70 (1985) (when a FAPE is not provided to a disabled student, the parents may place the child in a private school and then seek tuition reimbursement from the state).

### C.    Additional Evidence In IDEA Cases

Lastly, title 20, United States Code, section 1415 provides that the Court "shall hear additional evidence at the request of a party" in an action appealing the results of a due process hearing. 20 U.S.C. § 1415(i)(2)(C)(ii). And so, the IDEA contemplates that the source of the evidence considered by the reviewing court "will be the administrative hearing record, with some supplementation at trial." *Town of Burlington v. Dep't of Educ.*, 736 F.2d 773, 790 (1st Cir. 1984).

The burden of demonstrating that additional evidence should be considered by the Court falls on the requesting party. *See Y.B. v. Bd. of Educ. of Prince George's Cty.*, 895 F. Supp. 2d 689, 703 (D. Md. 2012). In this regard, this Court has recognized that the reasons for supplementing the administrative record in an IDEA case include the existence of gaps in the administrative record, the "'unavailability of a witness' or 'evidence concerning relevant events occurring subsequent to the administrative hearing.'" *Id.* (quoting *Town of Burlington*, 736 F.2d at 790) (explaining that reasons for supplementation might include "gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing").

IV.     **ANALYSIS**

The parties have filed cross-motions for summary judgment on the issues of whether:  (1) the ALJ's factual findings in this IDEA matter were regularly made; (2) the MCPS provided A.B. with a FAPE in the least restrictive environment for the 2019-20 school year; (3) the MCPS provided A.B. with a FAPE in the least restrictive environment for the 2020-21 school year; and (4) plaintiffs are entitled to tuition reimbursement for their unilateral placement of A.B. at the Lab School of Washington.  *See* Pl. Mot.; Def. Mot.

Plaintiffs argue that the Court should vacate the ALJ's December 22, 2020, Decision, because the ALJ's findings of fact were not regularly made and, therefore, are not entitled to deference.  *See* Pl. Mem. at 16-19.  In addition, plaintiffs argue that the ALJ incorrectly determined that the MCPS provided A.B. with a FAPE in the least restrictive environment for the 2019-20 and 2020-21 school years, because the ALJ:  (1) failed to consider the uniqueness and complexity of A.B.'s needs; (2) ignored the MCPS's failure to program for A.B.'s social and emotional needs; (3) ignored the MCPS's failure to properly identify and to program for A.B.'s occupational therapy and speech/language therapy needs; (4) ignored evidence showing A.B.'s response to programming at the MCPS and at the Lab School of Washington; and (5) inappropriately weighed the evidence concerning the credibility of the witnesses.  *See id.* at 21-44.  And so, plaintiffs request, among other things, that the Court grant their motion for summary judgment and award tuition reimbursement for A.B.'s unilateral placement at the Lab School of Washington during 2019-20 and 2020-21 school years.  *Id.* at 47.

Defendants counter that the Court should sustain the ALJ's December 22, 2020, Decision, because the ALJ's findings of fact were regularly made and warrant deference.  Def. Mem. at 15-18.  Defendants further argue that the record evidence in his case shows that the MCPS provided A.B. with a FAPE in the least restrictive environment for the 2019-20 and 2020-21 school years, because:  (1) these IEPs were developed in collaboration with A.B.'s parents; (2) the IEPs were based upon A.B.'s progress during prior school years; (3) the ALJ appropriately afforded deference to the views of MCPS officials regarding the appropriateness of the speech/language therapy and occupational therapy proposals in the 2020-21 IEP; (4) the ALJ appropriately considered A.B.'s responses to programming at the MCPS and the Lab School of Washington; and (5) the ALJ's credibility determinations with regards to the witnesses are

entitled to deference. *See id.* at 22-44. And so, defendants request, among other things, that the Court grant their cross-motion for summary judgment and dismiss this case. *Id.* at 45.

Lastly, plaintiffs have filed a motion for additional evidence, requesting that the Court consider eight additional exhibits, which defendants oppose. *See generally* Pl. Mot. Add. Evid.; Def. Resp.

For the reasons set forth below, plaintiffs have not demonstrated that the Court should consider additional evidence in this IDEA case. The extensive administrative record in this case also shows that the ALJ properly concluded that the MCPS provided A.B. with a FAPE in the least restrictive environment for the 2019-20 and 2020-21 school years. And so, the Court: (1) DENIES plaintiffs' motion for additional evidence, (2) DENIES plaintiffs' motion for summary judgment; (3) GRANTS defendants' cross-motion for summary judgment; and (4) DISMISSES the complaint. *See* Fed. R. Civ. P. 56.

## A.    Additional Evidence Is Not Warranted

As a preliminary matter, plaintiffs have not demonstrated that the Court should consider additional evidence in this case. *See Y.B.*, 895 F. Supp. 2d at 703 (explaining that the burden of demonstrating that additional evidence should be admitted lies with the requesting party). Courts have recognized that the reasons for supplementation of the record evidence in an IDEA case might include gaps in the administrative record, the unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing. *See id.*; *see also Town of Burlington*, 736 F.2d at 790. But, plaintiffs have not shown that such circumstances are present here.

Plaintiffs seek to add eight exhibits to the already extensive administrative record in this case.[5] *See generally* Pl. Mem. in Supp. Mot. Add. Evid. Plaintiffs acknowledge that this

---

[5] Plaintiffs seek to offer the following additional evidence: (l) A.B.'s school records from California and related documents; (2) two release of information forms; (3) a writing sample about A.B.'s early childhood; (4) emails exchanged between A.B.'s parents and MCPS staff about A.B.'s experiences while a student in the MCPS; (5) emails from A.B.'s parents to MCPS officials inquiring about occupational therapy services for A.B.; (6) excerpts from two course description booklets from the Earle B. Wood Middle School; (7) an email from Mr. Weinfeld to A.B.'s parents detailing his discussions with MCPS staff and the Lab School of Washington about A.B.'s potential programming for the 2019-20 school year; and (8) various academic achievement measures related to A.B.'s tenure as a MCPS student. *See* Pl. Mem. in Supp. Mot. Add. Evid. at 3-4.

additional evidence was available during the administrative proceedings before the ALJ and that they elected not submit this evidence at that time. *Id*. at 3. In addition, plaintiffs fail to show that their proposed additional evidence would either, fill gaps in the existing administrative record, address the unavailability of a witness or the improper exclusion of evidence, or provide relevant information about events occurring after the due process hearing. *See id.*; *see also Y.B.*, 895 F. Supp. 2d at 703. Given this, plaintiffs have not satisfied their burden to show that additional evidence is warranted. And so, the Court DENIES plaintiffs' motion for additional evidence.

### B.    The ALJ's Findings Of Fact Were Regularly Made

A careful review of the administrative record in this case also makes clear that the ALJ's factual findings were regularly made and warrant deference by the Court. This Court has held that, when evaluating whether findings of fact are regularly made, the proper inquiry concerns the process through which the ALJ made his findings. *See SA v. Weast*, 898 F. Supp. 2d 869, 874 (D. Md. 2012) (citation omitted) (emphasis in original); *see also J.P.*, 516 F.3d at 259; *Doyle*, 953 F.2d at 105 ("[I]n deciding what is the due weight to be given an administrative decision under *Rowley,* we think a reviewing court should examine the way in which the state administrative authorities have arrived at their administrative decision and the methods employed."). And so, the Court examines the way the ALJ made his factual findings in this case to determine whether these findings were regularly made. *Doyle*, 953 F.2d at 105.

In this regard, the record evidence shows that the ALJ employed normal fact-finding procedures in making the findings of fact in this case. *Id.* Notably, the administrative record shows that the ALJ made his factual findings after conducting an eight-day due process hearing, during which he heard the testimony of 11 witnesses and considered 129 exhibits. *See* Dec. at 2-11. The administrative record also shows that the ALJ made 120 detailed findings of fact, based upon this extensive evidentiary record. *See id.* at 11-52.

Plaintiffs' arguments that the ALJ's findings of fact were not regularly made are also unpersuasive. While plaintiffs correctly observe that there are no citations to the evidence in the ALJ's findings of fact, a careful reading of the December 22, 2020, Decision makes clear that the ALJ carefully considered the evidence presented in this case before making his findings of fact. *See* Dec. at 64-92. For example, Finding of Fact Numbers 24 and 25 make clear that the ALJ

14

considered evidence about Mr. Weinfeld's observations of A.B. in connection with the 2019-20 IEP in making these factual findings.  *See* Dec. at 21 (recognizing that Mr. Weinfeld conducted an observation of A.B. on June 6, 2019).  In addition, Finding of Fact Numbers 22 and 23 show that the ALJ considered evidence about A.B.'s progress and levels of performance during the 2018-19 school year in assessing the 2019-20 IEP.  *See id.* at 15-21 (showing that the ALJ considered teacher comments in regard to A.B.'s performance during the 2018-19 school year in making his factual findings); *see also id.* at 74-76 (showing that the ALJ considered A.B.'s performance during the 2018-19 school year in analyzing whether the 2019-20 IEP's proposed placement was the least restrictive environment under the IDEA).

Plaintiffs' argument that the some of the ALJ's findings of fact are contradictory, because the ALJ allowed only defendants to question witnesses about the 2018-19 IEP and found that A.B. had stronger math and reading skills than plaintiffs believe, is also not persuasive.  Pl. Mem. at 16-17.  As the administrative record makes clear, the ALJ correctly informed *all* parties during the due process hearing that the 2018-19 IEP "is not really the subject of the hearing," while he allowed the parties some "latitude" to discuss the 2018-19 IEP to provide context for A.B.'s levels of performance.  *See* Tr. at 1177-87, 1227-28.  The administrative record also makes clear that the ALJ's findings of fact about A.B.'s math and reading skills pertain to the 2017-18 school year.  And so, this finding of fact does not address the IEPs at issue in this case. *See* Dec. at 14.[6]

---

[6] Plaintiffs identify 13 categories of factual findings that they contend are improper:  (1) alleged contradictory factual findings about the 2018-19 IEP process; (2) alleged contradictory findings in Finding of Fact Number 16; (3) the omission of certain grades in Finding of Fact Number 20; (4) the omission of teacher comments in Finding of Fact Number 22; (5) the omission of information from Mr. Weinfeld's observation report in Findings of Fact Numbers 24 and 25; (6) the omission of the reason that A.B.'s parents sought a change in school assignment; (7) the omission of information about A.B.'s performance during the speech/language assessment at the Lab School of Washington from Findings of Fact Numbers 55-67; (8) the omission of the summary of the February 2020 speech/language testing from the review of the speech/language impact statement of A.B.'s Lab School of Washington IEP in Finding of Fact Number 90; (9) the omission of the summary of the MCPS's review of A.B.'s occupational therapy evaluation in Finding of Fact Number 95; (10) the omission of the details about the initial spring 2020 IEP team meeting regarding information from Lab School of Washington in Findings of Fact Numbers 100 and 101; (11) the omission of a description of A.B.'s parents' feedback in Finding of Fact Number 103; (12) the omission of facts about the disagreement that A.B.'s parents had with the IEP goals, including the absence of occupational therapy goals and the amount of speech and occupational therapy services in Findings of Fact Numbers 108, 115, 116, 117, and 118; and (13) the omission of the

The remainder of plaintiffs' objections to the ALJ's findings of fact appear to focus on the omission of information that plaintiffs argue should have been included in these factual findings. *See* Pl. Mem. at 16-17. For example, plaintiffs contend that the ALJ omitted certain teacher comments and information about A.B.'s performance during his speech/language assessment at the Lab School of Washington from the findings of fact. *See* Pl. Mem. at 18. While plaintiffs correctly observe that the ALJ did not include this information in his findings of fact, the omission of this information does not show that the ALJ's findings of fact were not regularly made. Rather, the record evidence makes clear that the ALJ considered A.B.'s speech/language assessment and the 2020-21 IEP team's review of that assessment during his analysis of the 2020-21 IEP. *See* Dec. at 81 (recognizing that Marjorie Siegel, the MCPS Speech/Language Pathologist, "consulted with Lab School staff" when developing the speech/language proposal in the 2020-21 IEP). The Court also observes that plaintiffs do not argue that any of the ALJ's factual findings are incorrect. *See generally* Pl. Mem.

Because the administrative record shows that the ALJ's findings of fact were made after he carefully considered the evidence in this case, the Court will give deference to the ALJ's factual findings. *See J.P.*, 516 F.3d at 259 (recognizing that the factual findings of the ALJ are considered *prima facie* correct, if they are "regularly made").

C.     **The Record Evidence Shows That The 2019-20 IEP And The 2020-21 IEP Provided A.B. With A FAPE**

Turning to the merits of the December 22, 2020, Decision, the record evidence supports the ALJ's conclusion that the 2019-20 IEP and the 2020-21 IEP provided A.B. with a FAPE in the least restrictive environment. It is well-established that the MCPS must offer A.B. "an IEP reasonably calculated to enable [him] to make progress appropriate in light of [his] circumstances." *Endrew F.*, 137 S. Ct. at 999. And so, the Supreme Court has recognized that ensuring that an IEP is "reasonably calculated" to meet a student's needs "requires a prospective judgment by school officials," and that "[a]ny review of an IEP must appreciate that the question is whether the IEP is *reasonable*, not whether the court regards it as ideal." *Id.* (emphasis in

---

fact that A.B.'s parents did not agree with the proposed placement at Northwood High School in Finding of Fact Number 119. *See* Pl. Mem. at 16-18.

original).  Applying these standards here, the record evidence shows that the MCPS provided A.B. with a FAPE in the least restrictive environment for the 2019-20 and 2020-21 school years.

### 1.    The 2019-20 IEP Provided A FAPE

In the December 22, 2020, Decision, the ALJ determined that A.B. is a student with a specific learning disorder under the IDEA, who is also twice exceptional.  Dec. at 64.  In this regard, the ALJ observed that A.B. experiences inattention, immaturity, and impulsivity, which impact him in the areas of academic fluency, written expression, social interactions, and math problem solving skills, and that A.B. is also impacted by ADHD and experiences deficits with executive functioning skills.  *Id.*

The ALJ also determined that the MCPS developed the 2019-20 IEP with these unique needs in mind.  Specifically, the ALJ observed that the MCPS developed the 2019-20 IEP during a collaborative process with A.B.'s parents and A.B.'s educational consultant, Mr. Weinfeld.  *Id.* at 65.  The ALJ also observed that, at the time of the June 12, 2019, IEP team meeting, Mr. Weinfeld and MCPS Special Education Coordinator, Sarah Jackson, agreed that a MCPS GT/LD Program would be an appropriate program for A.B.  *Id.* at 67-69.  And so, the ALJ determined that the 2019-20 IEP's proposed placement of A.B. within the GT/LD program at E. Lee Brooke Middle School was appropriate under the IDEA, given A.B.'s levels of performance and identified strengths and weaknesses at that time.  *See id.* at 74-75.

The ALJ also determined that the 2019-20 IEP appropriately addresses A.B.'s unique needs, because this IEP includes:  (1) special education services, both inside and outside the general education setting; (2) numerous testing and instructional accommodations; (3) use of assistive technology devices and supplementary aids; and (4) other services to help A.B. achieve his annual goals.  *Id.*  And so, the ALJ concluded that the 2019-20 IEP was reasonably calculated to enable A.B. to make appropriate progress given his circumstances.  *Id.* at 73; *see also Endrew F.*, 137 S. Ct. at 999.

The record evidence supports the ALJ's decision for several reasons.  First, the record evidence makes clear that the MCPS developed the 2019-20 IEP in close consultation and collaboration with A.B.'s parents and Mr. Weinfeld.  *See* Def. Ex. 23 at 3.  This collaborative process resulted in significant consensus among the IEP team participants about A.B.'s program for the 2019-20 school year.  *See id.* at 10; *see also* Tr. at 106 (Mr. Weinfeld testifying that he

was "recommending what is generally a GTLD program" during the June 12, 2019, IEP team meeting). Notably, and as the ALJ correctly observes in the December 22, 2020, Decision, the record evidence shows that A.B.'s parents and Mr. Weinfeld concurred with all but one of the stated goals and objectives in the 2019-20 IEP. *See* Dec. at 68; *see also* Tr. at 108-110.

The record evidence also shows that the MCPS appropriately developed the 2019-20 IEP based upon the information available to the IEP team at the time, including: (1) the opinions of A.B.'s parents and Mr. Weinfeld; (2) a March 2018 private assessment of A.B. conducted by Dr. Burgee; and (3) A.B.'s grades and teacher reports from the 2018-19 school year. *See* Def. Ex. 23 at 1-10. The evidentiary record also makes clear that the resulting IEP addresses A.B.'s special and unique needs. The 2019-20 IEP proposes: (1) 180 minutes of special education instruction in the general education setting per day; (2) 45 minutes of special education instruction outside the general education setting per day; and (3) 15 minutes of counseling per week outside the general education setting. *Id.* at 29. The 2019-20 IEP also contains specific goals and objectives that reflect A.B.'s areas of need, including: (1) developing "positive verbal and non-verbal communication skills to demonstrate positive peer relationships;" (2) returning "his classwork and homework by the due date;" and (3) initiating and sustaining "focus on a task until completion." *See id.* at 23-28. And so, as the ALJ correctly determined in the December 22, 2020, Decision, the goals in the 2019-20 IEP align with A.B.'s identified weaknesses, such as inattentiveness and impulsivity, struggles to positively interact with peers, and propensity to rush through work. *See id.* at 10.

The record evidence also supports the ALJ's determination that A.B. possesses certain strengths that would aid his performance in the GT/LD Program proposed in the 2019-20 IEP. *See* Dec. at 72. For example, the record evidence shows that Mr. Weinfeld determined during his June 6, 2019, observation that A.B. displayed a strong cognitive identity and that A.B. was generally on task. *See* Pl. Ex. 8 at 3. The record evidence also shows that A.B.'s teachers reported that he is "very inquisitive and curious, . . . likes to build and create things, [and] is able to reason well and think strategically." Def. Ex. 23 at 10. While these noted strengths do not negate the weaknesses found by the IEP team, they do support the ALJ's determination that A.B. could make progress in the GT/LD Program proposed in the 2019-20 IEP.

The Court also concurs with the ALJ's determination that the proposed placement of A.B. in the GT/LD Program at E. Lee Brooke Middle School was the least restrictive environment, consistent with the requirements of the IDEA.  In fact, the record evidence shows that all parties agreed during the June 12, 2019, IEP team meeting that A.B. would be best served by a placement in a GT/LD Program within the MCPS.  *See* Def. Exs. 69, 70 (showing that plaintiffs requested that A.B. be placed in the GT/LD program at North Bethesda Middle School, in part because he "needs the level of special education services and support provided by the GT/LDS program"); *see also* Pl. Ex. 10 at 1 (showing that plaintiffs again requested placement in North Bethesda Middle School's GT/LD program, because A.B. "needs to be in a larger cohort to maximize social psychological growth"); Tr. at 106; Dec. at 67.  Given this, the record evidence supports the ALJ's conclusion that the 2019-20 IEP was reasonably calculated to allow A.B. to make appropriate progress given his unique circumstances.  And so, the Court will not disturb the decision of the ALJ.

### 2.    The 2020-21 IEP Provided A FAPE

For many of the same reasons, the record evidence also supports the ALJ's decision that the 2020-21 IEP provided A.B. with a FAPE in the least restrictive environment.  In the December 22, 2020, Decision, the ALJ determined that the 2020-21 IEP was developed by the MCPS in close collaboration with A.B.'s parents and A.B.'s teachers at the Lab School of Washington.  Dec. at 79.  Notably, the ALJ also determined that this IEP included all the supplementary aids and services that A.B. received at the Lab School of Washington during the 2019-20 school year.  *Id.* at 77.

In addition, the ALJ determined that the IEP's proposed placement of A.B. within a MCPS GT/LD program was the least restrictive environment under the IDEA, given A.B.'s unique needs and then present levels of performance.  *Id.* at 90.  And so, the ALJ concluded that 2020-21 IEP addressed all of A.B.'s needs, and that this IEP was reasonably calculated to enable A.B. to make appropriate progress given his circumstances.  *Id.* at 91-92.

Again, the record evidence supports the ALJ's decision for several reasons.  First, the record evidence makes clear that the IEP team developed the 2020-21 IEP in collaboration with A.B.'s parents and teachers, consistent with the IDEA.  *See* Def. Ex. 59 at 1.  The record evidence also makes clear that the MCPS developed the 2020-21 IEP based upon the data and

information available to it at the time, including:  (1) A.B.'s progress reports and grades from the Lab School of Washington; (2) A.B.'s February 21, 2020, Lab School of Washington IEP; and (3) certain recent observations of A.B. by his parents and teachers.  Dec. at 46; Def. Ex. 59.

In addition, the record evidence supports the ALJ's determination that the 2020-21 IEP appropriately identifies and addresses A.B.'s strengths and weaknesses.  Dec. at 79.  Notably, the 2020-21 IEP recognizes that A.B. "is able to reason well and think strategically," "is very smart" and is "articulate."  Def. Ex. 59 at 14.  This IEP also recognizes that A.B. has certain weaknesses, including "a clear discrepancy between his skills and processing speed," and inattentiveness and impulsiveness, which "impact[] him in the areas of academic fluency, written expression, social interactions, and math problem-solving."  *Id.*

The record evidence also shows that the 2020-21 IEP addresses these strengths and weaknesses, by proposing:  (1) 100 minutes of special education services outside the general education setting per day; (2) 250 minutes of  special education services inside the general education setting per day; (3) 30 minutes of occupational therapy in the general education setting per month; (4) 30 minutes per week of counseling services outside of the general education setting; (5) 180 minutes per month of speech/language therapy outside of the general education setting; and (6) 60 minutes per month of speech/language therapy inside the general education setting.  Def. Ex. 59 at 15-36, 48-49; *see also* Dec. at 77.  This IEP also addresses A.B.'s strengths, by proposing that A.B. spend time in a general education setting.  *See* Def. Ex. 59 at 48-49.  The 2020-21 IEP also establishes goals and objectives that were tailored to A.B.'s unique circumstances.  For example, the 2020-21 IEP contains goals related to speech and language expression, math problem solving, and behavioral/social emotional development, that align with A.B.'s identified weaknesses.  *See id.* at 3, 37, 42, 45.

Similar to the record evidence concerning the 2019-20 IEP, the record evidence for the 2020-21 IEP also supports the ALJ's determination that placement of A.B. in the GT/LD Program at Northwood High School was the least restrictive environment, as required by the IDEA.  *See* Dec. at 90-91; *see also* Def. Ex. 59.  As the ALJ observes in the December 22, 2020, Decision, the evidence in this case shows that A.B. requires a learning environment that not only addresses his weaknesses, but also his strengths and appropriately challenges him given these strengths.  *See* Dec. at 90; *see also* Def. Ex. 59 at 6; Tr. at 1097-1100.  Because the record

evidence shows that the 2020-21 IEP would provide this kind of learning environment for A.B., the Court will not set aside the ALJ's decision that the 2020-21 IEP was reasonably calculated to allow A.B. to make progress given his circumstances.

### 3.   Plaintiffs' Objections To The ALJ's Decision Are Unsubstantiated

Lastly, plaintiffs have raised several objections to the ALJ's December 22, 2020, Decision that do not find support in the evidentiary record.

First, plaintiffs argue that the Court should set aside the December 22, 2020, Decision, because the ALJ failed to consider A.B.'s special education needs.  *See* Pl. Mem. at 30.  But, as discussed above, a careful review of the record evidence in this case shows that the ALJ correctly found A.B. to be a student with a specific learning disability who is twice exceptional, and that the 2019-20 IEP and 2020-21 IEP proposed special education services and supplemental services to address these unique needs.  *See* Def. Ex. 23 at 14-19, 29; Def. Ex. 59 at 15-36, 48-49.

Plaintiffs' argument that the ALJ ignored the impact of A.B.'s traumatic early childhood in analyzing the two IEPs at issue in this case is also belied by the record evidence.  In the December 22, 2020, Decision, the ALJ recognizes that A.B. "experienced severe abuse and neglect" before moving to Maryland and enrolling in the MCPS.  Dec. at 11.  The record evidence also shows that the 2019-20 IEP and the 2020-21 IEP propose weekly counseling outside the general education setting to address this traumatic early childhood.  *See* Def. Ex. 23 at 29; Def. Ex. 59 at 48.

Plaintiffs' argument that the ALJ—and the MCPS—failed to consider A.B.'s occupational therapy and speech/language therapy needs when considering the 2019-20 IEP and 2020-21 IEP are also unsubstantiated.  *See* Pl. Mem. at 35-36.  With regards to A.B.'s occupational therapy needs, the record evidence shows that neither A.B.'s parents nor Mr. Weinfeld objected to the lack of occupational therapy in the 2019-20 IEP during the June 12, 2019, IEP team meeting.  *See* Def. Ex. 23 at 10; *see also* Tr. at 108-10 (Mr. Weinfeld testifying that his notes from the IEP team meeting reflect that he had no disagreement with the lack of occupational therapy or speech/language therapy proposals in the IEP).  The record evidence also shows that MCPS's Occupational Therapist, Jody Polon, participated in the development of the 2020-21 IEP and that she reviewed the Lab School of Washington's occupational therapy

evaluation for A.B. in preparation for the 2020-21 IEP team meeting.  *See* Def. Ex. 59 at 2.
Given this, the record evidence shows that the ALJ and the MCPS appropriately considered
A.B.'s occupational therapy needs with respect to these two IEPs.[7]

The record evidence similarly shows that A.B.'s parents and Mr. Weinfeld did not object
to the lack of a speech/language therapy proposal in the 2019-20 IEP.  *See* Def. Ex. 23 at 10; *see
also* Tr. at 108-10.  In addition, the record evidence also shows that the MCPS's
Speech/Language Pathologist, Marjorie Siegel, testified A.B.'s speech/language "scores . . . were
within the average range when compared to same age peers."  Tr. at 1252.  To address A.B.'s
speech/language needs, the record evidence further shows that the 2020-21 IEP proposed that
A.B. receive 45 minutes of pull-out services per week and 15 minutes of plug-in services per
week for speech/language therapy.  Tr. at 1249.  And so, again, the record evidence makes clear
that the ALJ and the MCPS appropriately considered and addressed A.B.'s occupational therapy
and speech/language therapy needs.[8]

Plaintiffs similarly argue without persuasion that the ALJ ignored evidence regarding
A.B.'s response to programming at the MCPS and at the Lab School of Washington in analyzing
the two IEPs at issue in this case.  The ALJ discusses A.B.'s progress during the 2018-19 school
year at Earle B. Wood Middle School in great detail in the December 22, 2020, Decision.  *See*
Dec. at 15-21.  The ALJ also observes that A.B. was making progress in meeting the goals
contained in his 2018-19 IEP while enrolled in the MCPS.  *Id.* at 15; *see also* Def. Ex. 61 at 7-10
(showing that A.B. was making progress in meeting his IEP goals as of April 2019).  In addition,
the ALJ correctly observes in the December 22, 2020, Decision that the MCPS developed the
2020-21 IEP in consultation with A.B.'s teachers at the Lab School of Washington.  Dec. at 77.
Given this, the record evidence make clear that the ALJ appropriately considered A.B.'s

---

[7] Ms. Polon testified that A.B.'s occupational therapy needs were addressed in the 2020-21 IEP based
upon a collaborative process among the MCPS, A.B.'s parents, and representatives of the Lab School of
Washington.  *See* Tr. at 1327-49.  Ms. Polon also testified that many of the occupational therapy services
requested by plaintiffs were covered through the work of teachers at the MCPS.  *Id.* at 1327-30.

[8] Ms. Siegel also testified that speech pathologists in the MCPS do not work on reading, writing or
expressive language, because teachers provide these services in the classroom setting.  Tr. at 1256.

responses to programming at the MCPS and at the Lab School of Washington in analyzing the 2019-20 IEP and 2020-21 IEP.[9]

Plaintiffs' final argument—that the ALJ improperly weighed the testimony of certain MCPS witnesses in this case—is also belied by the evidentiary record.  The record evidence shows that the ALJ carefully considered and weighed the testimony of all witnesses in this case.  As discussed above, the ALJ heard the testimony of from 11 witnesses during the due process hearing.  *See* Dec. at 65-69, 72, 81-90.  The administrative record shows that the ALJ afforded considerable weight to the testimony of many of these witnesses, including Mr. Weinfeld.  *See id.* at 67 (giving Mr. Weinfeld's "testimony significant weight" in regard to what he told the 2019-20 IEP team at the June 12, 2019, IEP team meeting).

The ALJ also gave great weight to the testimony of MCPS witnesses Sarah Jackson, Jody Polon, and Marjorie Siegel, because he found that their respective testimony demonstrated that these witnesses understood A.B.'s strengths, weaknesses and needs, and the testimony was also supported by reliable data and anecdotal information.  *See, e.g.*, *id.* at 71 (explaining why the ALJ gave great weight to Ms. Jackson's testimony), 81-82 (explaining why the ALJ gave great weight to Ms. Siegel's testimony), 82-83 (explaining why the ALJ gave great weight to Ms. Polon's testimony).  The ALJ's credibility determinations with regard to the testimony of these witnesses are supported by the record evidence.  *See, e.g.*, Def. Ex. 31 (Lab School of Washington 2019-20 IEP); Def. Ex. 38 (2020 Lab School of Washington speech/language assessment); Def. Ex. 39 (2020 Lab School of Washington occupational therapy assessment); Def. Ex. 45 (the MCPS IEP team's review of A.B.'s 2020 Lab School of Washington's speech/language therapy assessment); Def. Ex. 46 (the MCPS IEP team's review of a 2020 private occupation therapy assessment of A.B.); Def. Ex. 47 (Ms. Polon's review and analysis of the 2020 Lab School of Washington occupational therapy assessment).

---

[9] The Court agrees with defendants that the ALJ need not have considered A.B.'s progress at the Lab School of Washington in evaluating the 2019-20 IEP, because this IEP was developed before A.B. enrolled in the school.  *See Schaffer ex rel. Schaffer v. Weast*, 554 F.3d 470, 477 (4th Cir. 2009) ("Judicial review of IEPs under the IDEA is meant to be largely prospective and to focus on a child's needs looking forward; courts thus ask whether, at the time an IEP was created, it was reasonably calculated to enable the child to receive educational benefits.") (citations omitted).

Plaintiffs contend that that the ALJ should not have given any weight to the testimony of these MCPS witnesses, because they did not observe or evaluate A.B. in person.  *See* Pl. Mem. at 25.  But, the record evidence shows that these witnesses were actively involved in developing the 2019-20 IEP and 2020-21 IEP, including engaging in discussions with A.B's parents and teachers.  *See* Pl. Mem. at 28; *see also* Dec. at 64-65, 81; Def. Exs. 23 at 14; Def. Ex. 59 at 14.  For example, the record evidence shows that Ms. Jackson attended the IEP team meetings for the 2019-20 IEP; discussed A.B. and his needs with his parents; and collaborated with educators at Earle B. Wood Middle School in developing the 2019-20 IEP.  *See* Tr. at 965-66, 945-58.  The record evidence also shows that Ms. Jackson, Ms. Polon, and Ms. Siegel spoke with Lab School of Washington staff at length regarding A.B.'s performance to help to develop the 2020-21 IEP.  *See* Def. Exs. 45, 46, 47, 58; *see also* Tr. at 932-1267 (Ms. Jackson's testimony), 1268-92 (Ms. Siegel's testimony), 1311-92 (Ms. Polon's testimony).  Given this evidence, the ALJ appropriately determined that these witnesses provided highly probative testimony regarding A.B.'s unique needs and how these needs were addressed by the two IEPs.  *See Endrew F.*, 137 S. Ct. at 1002; *see also S.A.*, 898 F. Supp. 2d at 877 (stating that even "an ALJ's implicit credibility determinations are entitled to the same deference as explicit findings").

While plaintiffs understandably disagree with the ALJ's decision in this case, the ALJ's decision is amply supported by the record evidence.  Because the administrative record shows that the MCPS provided A.B. with a FAPE in the least restrictive environment for the 2019-20 and 2020-21 school years, the Court DENIES plaintiffs' motion for summary judgment; GRANTS defendants' cross-motion for summary judgment; and DISMISSES this case.[10]

## V.   CONCLUSION

In sum, plaintiffs have not demonstrated that the Court should consider additional evidence in this IDEA matter.  The record evidence also shows that the ALJ appropriately determined that the 2019-20 IEP and 2020-21 IEP provided A.B. with a FAPE in the least restrictive environment.  And so, the Court:

---

[10] Because the Court concludes that the MCPS provided A.B. with a FAPE in the least restrictive environment for the 2019-20 and 2020-21 school years, the Court does not reach the issue of whether tuition reimbursement for A.B.'s placement at the Lab School of Washington for these school years would be an appropriate remedy.

1. **DENIES** plaintiffs' motion for additional evidence;

2. **DENIES** plaintiffs' motion for summary judgment;

3. **GRANTS** defendants' cross-motion for summary judgment; and

4. **DISMISSES** the complaint.

**IT IS SO ORDERED.**

<u>s/ Lydia Kay Griggsby</u>
LYDIA KAY GRIGGSBY
United States District Judge